# IN THE SUPREME COURT OF THE STATE OF IDAHO

## Docket No. 43027

SYRINGA NETWORKS, LLC, an Idaho
limited liability company,

    Plaintiff-Respondent-Cross Appellant,

v.

IDAHO DEPARTMENT OF
ADMINISTRATION,

    Defendant-Appellant-
    Cross Respondent,

and

ENA SERVICES, LLC, a Division of
EDUCATION NETWORKS OF AMERICA,
Inc., a Delaware corporation; QWEST
COMMUNICATIONS, LLC, a Delaware
limited liability company,

    Defendants-Cross Respondents.

SYRINGA NETWORKS, LLC, an Idaho
limited liability company,

    Plaintiff-Respondent,

v.

ENA SERVICES, LLC, a Division of
EDUCATION NETWORKS OF AMERICA,
Inc., a Delaware corporation,

    Defendant-Appellant,

and

IDAHO DEPARTMENT OF
ADMINISTRATION;

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

Boise, February 2016 Term

2016 Opinion No. 22

Filed: March 1, 2016

Stephen W. Kenyon, Clerk

**QWEST COMMUNICATIONS, LLC, a**
**Delaware limited liability company,**

  **Defendants.**

_____

**SYRINGA NETWORKS, LLC, an Idaho**
**limited liability company,**

  **Plaintiff-Respondent,**

**v.**

**QWEST COMMUNICATIONS, LLC, a**
**Delaware limited liability company,**

  **Defendant-Appellant,**

**and**

**IDAHO DEPARTMENT OF**
**ADMINISTRATION; ENA SERVICES,**
**LLC,  a Division of EDUCATION**
**NETWORKS OF AMERICA, Inc., a**
**Delaware corporation,**

  **Defendants.**

_____

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
).

Appeal from the District Court of the Fourth Judicial District of the State of Idaho, Ada County.  Hon. Patrick H. Owen, District Judge.

The judgment of the district court is <u>affirmed</u>.

Hawley Troxell Ennis & Hawley LLP, Boise, for appellant Idaho Department of Administration. Merilyn W. Clark and Steven F. Schossberger argued.

Bryan Cave LLP, Denver, Colorado, and Moffatt, Thomas, Barrett, Rock & Fields, Chartered, Boise, for appellant Qwest Communications Company, LLC. Steven J. Perfrement argued.

Bradley Arant Boult Cummings, LLP, Nashville, Tennessee, and Greener Burke Shoemaker Oberrecht, PA, Boise, for appellant ENA Services, LLC. Robert S. Patterson argued.

Givens Pursley LLP, Boise, for respondent Syringa Networks, LLC. David R. Lombardi argued.

_____

J. JONES, Chief Justice

This case involves a second set of appeals arising from an action challenging the bidding process for the Idaho Education Network ("IEN"). Syringa Networks, LLC, sued Qwest Communications, LLC, ENA Services, LLC, and the Idaho Department of Administration ("DOA") and certain DOA employees, alleging injury arising from contract awards and amendments that DOA issued to Qwest and ENA related to the IEN. The district court dismissed all of Syringa's claims. On appeal we held that Syringa had standing to pursue Count Three, which alleged that DOA violated Idaho Code section 67-5718A. Count Three was remanded to the district court for further proceedings.

On remand, the district court entered partial summary judgment for Syringa on Count Three, holding that the amendments and the underlying contracts were void for violating state procurement law. The district court denied Syringa's motion to order DOA to demand repayment of money advanced under the void contracts. The district court also awarded Syringa attorney fees.

Syringa, Qwest, ENA, and DOA each timely appealed. Syringa appeals the district court's denial of its request to order DOA to demand repayment from Qwest and ENA. The other parties appeal the district court's grant of partial summary judgment to Syringa, arguing that the district court's conclusions were procedurally improper and substantively incorrect for a variety of reasons. DOA also challenges the district court's award of attorney fees to Syringa. Syringa, ENA, and DOA request attorney fees on appeal.

## I.
## FACTUAL AND PROCEDURAL BACKGROUND

The IEN was to be "a high-bandwidth telecommunications distribution system for distance learning" in public schools, libraries, and state agencies. *Syringa Networks, LLC v. Idaho Dep't of Admin.*, 155 Idaho 55, 58, 305 P.3d 499, 502 (2013) [hereinafter "*Syringa I*"]. DOA was given administrative oversight of the IEN, including "[p]rocur[ing] telecommunications services and equipment for the IEN through an open and competitive bidding process." *Id.* (citing I.C. § 67-5745D(5)(h) (subsection repealed 2010)). In 2008, DOA

issued a request for proposals ("RFP") for work on the IEN, seeking only comprehensive, end-to-end bids. Syringa could not provide end-to-end services so it agreed to be a subcontractor on the bid submitted by ENA. In January 2009, DOA issued substantially identical Statewide Blanket Purchase Orders ("SBPOs") to Qwest and ENA as a "multiple award" under Idaho Code section 67-5718A. In February 2009, DOA unilaterally amended both SBPOs to assign some portions of the IEN work exclusively to ENA and other portions exclusively to Qwest. Under the amendments, Qwest was to provide all IEN technical network services and ENA was to be the service provider listed on the State's federal E-Rate form. The amendments assigned to Qwest all of the work that Syringa had planned to do as ENA's subcontractor.

Syringa brought suit against Qwest, ENA, DOA, and certain DOA employees. Syringa alleged that DOA violated Idaho Code section 67-5718A, a multiple award procurement statute, when it amended Qwest's SBPO. Among other claims, Syringa also alleged breach of contract against ENA. The district court dismissed all of Syringa's claims. On appeal in *Syringa I*, we reinstated Count Three of Syringa's original complaint, regarding DOA's alleged violation of the multiple award procurement statute. *Id.* at 60–62, 305 P.3d at 504–506.

In *Syringa I*, after reviewing the facts alleged, we vacated the district court's summary judgment holding that Syringa had failed to exhaust its administrative remedies and held that Syringa had standing to bring Count Three "when the amendments to the contracts are viewed in the context of the entire bidding process." *Id.* at 61, 305 P.3d at 505. We then concluded that "Syringa has alleged a distinct and palpable injury . . . that is alleged to have been caused by the challenged conduct and that can be redressed by judicial relief." *Id.* at 62, 305 P.3d at 506. We remanded Count Three for further proceedings. *Id.* at 68, 305 P.3d at 512.

On remand, the district court permitted Syringa to amend its claim in Count Three: (1) to add specific references to Idaho Code section 67-5718, the statute this Court considered in *Syringa I*; (2) to make a specific reference to the amended awards to Qwest and ENA; and (3) to seek a ruling that the awards are void as a matter of law. On reconsideration, the district court vacated its prior ruling to the extent that it had granted "leave for Syringa to challenge the original SBPOs." The court found that Syringa had previously conceded that the original SBPOs were lawful, and it concluded that judicial estoppel precluded Syringa from subsequently challenging them.

4

The district court found that ENA and Qwest were necessary parties, although it also found that ENA was no longer a party on remand because all claims against it in the original complaint had been fully resolved. The court further concluded that ENA must be made a party and that Qwest remained a party. The court ordered Syringa to serve ENA with an amended pleading, which Syringa did.

Syringa filed a motion for partial summary judgment, seeking a determination that the SBPOs were void. ENA filed a motion to dismiss in which it argued the court lacked jurisdiction over it. DOA also filed a motion for summary judgment in which Qwest joined, arguing that the case was moot because DOA, Qwest, and ENA had rescinded the SBPO amendments. Following briefing, the district court took up these motions on October 10, 2014. The court treated ENA's motion to dismiss as a motion for summary judgment because it concluded that the motion involved consideration of matters outside the pleadings. After determining that all necessary parties had been joined and the court had jurisdiction, and despite its prior holding that Syringa was estopped from challenging the original SBPOs, the district court nonetheless ultimately concluded that the SBPOs, as amended, were void. In granting partial summary judgment to Syringa, the district court relied on the law of the case doctrine and the doctrine that Idaho courts have an affirmative duty to raise the issue of contract illegality regardless of whether any party had pled the issue. The district court held that our statements in *Syringa I* that DOA violated state procurement law were the law of the case and were binding upon the parties and the district court. Referring to its perceived duty to raise the issue of illegality, the district court held that it may not ignore the issue or countenance the continuation of contracts that resulted from violation of state procurement law. The court also found that because the SBPOs were void, DOA's attempt to moot the case by rescinding the amendments was futile. The court rejected ENA's arguments that *res judicata* or judicial estoppel precluded a holding that the SBPOs are void.

The district court later denied, both initially and on reconsideration, Syringa's request for an order requiring DOA to seek repayment of monies advanced under the SBPOs. Syringa sought and the district court awarded Syringa attorney fees totaling over $930,000, under Idaho Code sections 12-117, 12-120(3), and 12-121. The parties timely appealed.

On appeal here, ENA argues that the district court lacked jurisdiction over ENA after remand and that Syringa's challenge to ENA's SBPO was precluded by *res judicata* and judicial estoppel. ENA also argues that the district court erred in treating ENA's motion to dismiss as a

motion for summary judgment. DOA and Qwest argue that the district court lacked jurisdiction to grant Syringa's requested relief. DOA, Qwest, and ENA all argue that the district court erred in concluding that the SBPOs, as amended, are void. Syringa argues that the district court erred by not ordering DOA to demand repayment of monies advanced under the void SBPOs. DOA argues that the district court erred by granting attorney fees and costs to Syringa on remand. Syringa, ENA, and DOA each request attorney fees on appeal.

## II.
## ISSUES PRESENTED ON APPEAL

1. Whether the district court's holding that the ENA and Qwest SBPOs were void was procedurally proper.

2. Whether the district court's holding that the ENA and Qwest SBPOs were void was substantively correct.

3. Whether the district court erred or abused its discretion in denying Syringa's motion to order DOA to demand repayment of money advanced under the SBPOs.

4. Whether the district court abused its discretion in awarding attorney fees to Syringa.

5. Whether Syringa, ENA, or DOA are entitled to attorney fees on appeal.

## III.
## STANDARD OF REVIEW

The issues raised on appeal have a variety of standards of review. Accordingly, the applicable standard of review is discussed within the analysis for each issue.

## IV.
## ANALYSIS

**A. The district court's order concluding that the ENA and Qwest SBPOs were void was procedurally proper.**

DOA, ENA, and Qwest assert that, for a variety of reasons, the district court's order voiding the SBPOs was not procedurally proper. ENA argues that the district court lacked jurisdiction over ENA on remand and that the district court erred in treating ENA's motion to dismiss as a motion for summary judgment. Qwest likewise argues the district court lacked jurisdiction over it on remand. DOA and Qwest argue that the case became moot after DOA rescinded the amendments. DOA argues that the district court erred in holding that it had an independent duty to invalidate illegal contracts, and ENA similarly argues that the district court's duty to address the validity of a contract does not take priority over the law of the case or basic

jurisdictional principles. Finally, DOA and Qwest argue that the district court erred in permitting Syringa to challenge the SBPOs after having accepted benefits from them.[1] ENA similarly argues that Syringa must be judicially estopped from challenging the SBPOs because it previously conceded their lawfulness. None of these arguments have merit.

### 1. The district court had jurisdiction over ENA and Qwest on remand.

ENA and Qwest both argue that the district court lacked jurisdiction to void their respective SBPOs on remand for two reasons. First, each argues that it was no longer party to the action after the dismissals of the claims "directly" against them were affirmed in *Syringa I*. Second, each argues that it was impermissible for Syringa to amend Count Three on remand to add ENA as a party and to challenge the original SBPOs, when the original challenge was only to the Qwest SBPO.[2]

Count Three of Syringa's pre-appeal complaint alleged that DOA violated Idaho Code section 67-5718A by unlawfully granting a multiple award to Qwest and ENA when it should have granted a single award to ENA.[3] The complaint challenged the Qwest purchase order but did not purport to challenge the ENA purchase order.[4] DOA contends that Syringa's litigation strategy was to void Qwest's SBPO but preserve ENA's SBPO so that ENA would be the only remaining contract awardee, and Syringa would then perform a large portion of the contract work as ENA's subcontractor. On remand, Syringa moved to amend Count Three to allege a violation of Idaho Code section 67-5718 in addition to the already-alleged violation of section 67-5718A and to challenge ENA's SBPO and amendment in addition to the already-challenged Qwest SBPO and amendment. The district court granted Syringa's motion to amend.

---

[1] DOA also asserts in its reply brief that allowing Syringa to challenge the original SBPOs would be "absurd and incongruous" because Syringa was not required to exhaust its administrative remedies with respect to the original SBPOs. However, this argument was not raised in DOA's opening brief and, therefore, will not be considered. *Patterson v. State Dep't of Health and Welfare*, 151 Idaho 310, 321, 256 P.3d 718, 729 (2011).

[2] The plain language of the original complaint appears to challenge the Qwest SBPO, not just the amendment. However, in the prior appeal Syringa apparently conceded that the SBPOs were lawful and focused its challenge on the Qwest amendment.

[3] Syringa and ENA purported to enter a teaming agreement through which they would fulfill the ENA purchase order together, but this Court found the agreement unenforceable for failure to state the material term of price. *Syringa I*, 155 Idaho at 62–64, 305 P.3d at 506–508.

[4] Paragraph 94 of the complaint states: "Syringa seeks a declaratory judgment against the DOA, Division of Purchasing declaring its award of the IEN Purchase Order to Qwest void, null, and of no effect pursuant to Idaho Code § 67-5725 and/or permanent injunctive relief prohibiting the State and Qwest from performing under the lEN Purchase Order."

The district court later vacated this ruling to the extent that it had permitted Syringa to challenge the original SBPOs, holding that judicial estoppel precluded Syringa from asserting that the original SBPOs were illegal after having previously conceded that they were lawful. At the same time, the district court found that ENA and Qwest were necessary parties, but that ENA was no longer a party because each claim against ENA in the original complaint had been fully resolved. The district court found, however, that ENA must be made a party. Accordingly, the district court directed Syringa to amend its complaint again and serve the amended pleading on DOA, Qwest, and ENA. Syringa complied. Ultimately, after finding that all necessary parties had been joined and that it had jurisdiction, the district court concluded that the SBPOs, as amended, were void. Accordingly, the judge granted Syringa partial summary judgment.

The parties cite Idaho Code section 10-1211, part of the Idaho Uniform Declaratory Judgment Act, which provides in relevant part that "[w]hen declaratory relief is sought, all persons shall be made parties who have or claim any interest which would be affected by the declaration, and no declaration shall prejudice the rights of persons not parties to the proceeding." Qwest asserts that Syringa's failure to name Qwest and ENA as defendants in Count Three meant that after all the claims "against" Qwest and ENA had been dismissed and, with those dismissals affirmed in *Syringa I*, no additional claims could be brought against Qwest or ENA on remand. DOA interprets section 10-1211 as apparently requiring that each claim be asserted against each defendant in order to provide sufficient notice to the defendants.

ENA asserts that it was not a party to Count Three and that when the Supreme Court affirmed the dismissal of the counts to which it was a party, it was entitled to enjoy the benefits of a final adjudication on the merits and it was no longer subject to the district court's jurisdiction. ENA insists that it was fully and finally dismissed from the case. Qwest advances the same argument. Qwest also argues that as parties to the contracts that Syringa sought to void, Qwest and ENA were necessary and indispensable parties to the claims Syringa sought to add in Count Three.

"Jurisdiction is . . . a question of law and is reviewed *de novo*." *State v. Lute*, 150 Idaho 837, 839, 252 P.3d 1255, 1257 (2011).

The arguments DOA, ENA, and Qwest raise are without merit. The fact that neither ENA nor Qwest was named as a defendant in Count Three is irrelevant. Neither party could have or should have been a named defendant in Count Three because the cause of action alleged a breach

8

of a public duty by DOA, the governmental entity subject to the procurement statutes at issue. Neither ENA nor Qwest had or could have had any duty to comply with the statute because they are not governmental entities. Accordingly, there could be no claim "against" them under Count Three. Syringa did not need to name them within Count Three for jurisdiction to be proper. Both ENA and Qwest were, however, interested and necessary parties under Idaho Code section 10-1211. There is no dispute that Syringa's original complaint did join ENA and Qwest as parties.

This Court's opinion in *Syringa I* did not dismiss ENA or Qwest from the case, nor was it necessary on remand to amend Count Three to directly challenge ENA's SBPO. Because Count Three alleged that DOA violated a multiple award procurement statute, it was implicit that each contract could be found void due to illegality. Even at the time Syringa filed its original complaint, it was evident that if Syringa prevailed on its claim, the necessary result was that both public contracts would be declared void. *See* I.C. § 67-5725. It would be logically inconsistent for only one contract of a multiple award to be declared illegal and void where the alleged statutory violation, as here, relates to the process of granting the multiple award. Thus, regardless of whether *Syringa I* would otherwise have resulted in the dismissal of ENA or Qwest, neither party could be or was dismissed while it remained a necessary party based on Count Three. The district court's contrary conclusion that ENA was no longer a party was in error. Both ENA and Qwest remained parties on remand because they were necessary parties on the pending Count Three. Syringa's motion to amend its complaint was unnecessary because the original complaint sufficed to put all interested and necessary parties on notice of the basic allegations and likely remedies. Accordingly, the district court had jurisdiction over ENA and Qwest at all relevant times.

2. **The district court did not commit error when it concluded it had an affirmative duty to raise the issue of illegality of the SBPOs.**

The district court held that a court has an affirmative duty to raise the issue of illegality at any stage in the litigation, regardless of whether the issue was pleaded by a party. The court quoted *Quiring v. Quiring*:

> A party to a contract, void as against public policy, cannot waive its illegality by failure to specially plead the defense or otherwise, but whenever the same is made to appear at any stage of the case, it becomes the duty of a court to refuse to enforce it; again, a court of equity will not knowingly aid in the furtherance of an illegal transaction; in harmony with this principle, it does not concern itself as to the manner in which the illegality of a matter before it is brought to its attention.

9

130 Idaho 560, 567, 944 P.2d 695, 702 (1997). The district court perceived that it was "not free to ignore this issue or to countenance the continuation of contracts that resulted from violation of state procurement law."

DOA argues that the district court had no such independent duty to invalidate the SBPOs. DOA contends *Quiring* holds that a *party* to a contract cannot waive the illegality of a contract that is void as against public policy and thereby require the Court to knowingly enforce the contract. DOA insists that *Quiring* is inapplicable because Syringa was not a party to the SBPOs and none of the parties to the SBPOs are seeking judicial enforcement of the agreements.

DOA asserts that the more recent case of *City of Meridian v. Petra Inc.* applies instead of *Quiring*. In *Petra*, this Court rejected Meridian's contention that a contract between Meridian and Petra was illegal and unenforceable due to Petra's failure to post a payment and performance bond as required by Idaho Code section 54-4512. 154 Idaho 425, 444–445, 299 P.3d 232, 251–252 (2013). We held that the contract was not illegal, despite the violation of the bonding statute, because the contract itself was neither made for the purpose of furthering anything illegal nor founded on something illegal. *Id.* at 446, 299 P.3d at 253.

In its analysis of *Petra*, DOA makes two incorrect statements. First, DOA represents that this Court stated in *Petra* that a contract is only illegal if it cannot be performed without violating applicable law. There was no such holding in *Petra*. Rather, *Petra* acknowledged that a contract *may* be illegal if it cannot be performed without violating the law, but did not hold that illegal performance is the *only* way a contract may be illegal. Indeed, the language in *Petra* immediately following DOA's quote demonstrates the inaccuracy of DOA's assertion:

> This Court has similarly found that "[a]n illegal contract is one that rests on illegal consideration consisting of any act or forbearance which is contrary to law or public policy." *Quiring v. Quiring*, 130 Idaho 560, 566, 944 P.2d 695, 701 (1997). Furthermore, contracts prohibited by law are illegal "and hence unenforceable." *Id.* This Court has also held that contracts that are "made for the purpose of furthering any matter or thing prohibited by statute ... [are] void. This rule applies to every contract which is founded on a transaction malum in se, or which is prohibited by statute, on the ground of public policy." *Porter v. Canyon Cnty. Farmers' Mut. Fire Ins. Co.*, 45 Idaho 522, 525, 263 P. 632, 633 (1928).

*Id.* at 445, 299 P.3d at 252. Of particular note is the fact that this excerpt quotes with approval the very proposition in *Quiring* that DOA seeks to attack.

10

DOA also incorrectly states that, similar to the valid underlying contract in *Petra*, the SBPOs in this case have been declared valid by this Court and by the district court. DOA quotes *Syringa I* and the district court, but none of the quoted material is a declaration or legal conclusion by either court that the SBPOs were valid. They merely recite underlying facts or procedural history. It is simply not true that either court has ever declared the SBPOs valid.

This Court exercises free review over the trial court's conclusions of law. *Quiring*, 130 Idaho at 563, 944 P.2d at 698. The district court's determination that it was obligated to raise the issue of illegality was a legal conclusion, which will, therefore, be reviewed *de novo*.

The district court correctly concluded that *Quiring* imposed on it a duty to invalidate the SBPOs if they were unlawful. If the SBPOs were void for violating state procurement laws, as the district court ultimately concluded, then it was proper for the district court to find that it had an independent duty to invalidate them. We affirm the district court's holding that it had a duty to raise the issue of illegality of the SBPOs, regardless of whether Syringa could raise that issue on remand.

### 3. The district court did not err in treating ENA's motion to dismiss as a motion for summary judgment.

On remand, Syringa moved for summary judgment. ENA moved for dismissal on judicial estoppel and *res judicata* grounds. The district court treated ENA's motion to dismiss as a motion under Idaho Rule of Civil Procedure 12(b)(6), alleging failure to state a claim upon which relief can be granted. Because the district court found that the motion involved consideration of matters outside the pleadings, it treated the motion to dismiss as a motion for summary judgment. The district court found that it need not address the merits of ENA's motion to dismiss prior to Syringa's motion for summary judgment.

ENA alleges that the district court "decided to ignore the issues" raised in its motion to dismiss, which denied ENA due process of law, the ability to conduct discovery and investigation, and the opportunity to develop facts that would support its defenses. ENA asserts that Rule 12(b) does not permit a district court to convert a motion to dismiss where the motion offers no disputed issues of fact.

"When this Court reviews an order dismissing an action pursuant to I.R.C.P. 12(b)(6), we apply the same standard of review we apply to a motion for summary judgment." *Losser v. Bradstreet*, 145 Idaho 670, 672−73, 183 P.3d 758, 760−61 (2008). "This Court reviews an appeal from an order of summary judgment *de novo*, and this Court's standard of review is the

same as the standard used by the trial court in ruling on a motion for summary judgment." *Curlee v. Kootenai Cnty. Fire & Rescue*, 148 Idaho 391, 394, 224 P.3d 458, 461 (2008). The Court has not directly addressed the precise issue of whether a district court errs when treating a motion to dismiss as a motion for summary judgment. Because the Court reviews trial court decisions on both motions to dismiss and motions for summary judgment under the *de novo* standard, and because the decision was a conclusion of law, the Court will apply *de novo* review to the district court's decision.

> If, on a motion asserting the defense numbered (6) to dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56.

I.R.C.P. 12(b). "Where a motion to dismiss for failure to state a claim upon which relief can be granted is supported by information outside of the pleadings, the motion is treated as a motion for summary judgment." *McCann v. McCann*, 152 Idaho 809, 814, 275 P.3d 824, 829 (2012). ENA misconstrues the standard by focusing on whether there were disputed facts rather than on whether matters outside the pleading were presented. In addition to citing to two filed versions of Syringa's complaint, ENA also cited to *Syringa I* and to two of the district court's previously filed decisions. Thus, ENA presented matters outside the pleadings and it was, therefore, not error for the district court to treat the motion to dismiss as a motion for summary judgment.

ENA further argues that the district court violated Rule 12(b) by not giving ENA adequate notice that its motion to dismiss would be treated as a motion for summary judgment. The language in Rule 12(b) is mandatory rather than discretionary, requiring that "the motion *shall* be treated as one for summary judgment." I.R.C.P. 12(b) (emphasis added). ENA should have known that the court would treat its motion as a motion for summary judgment because ENA presented matters beyond the pleadings. The rule requires that when a motion to dismiss is treated as a motion for summary judgment, "all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56." I.R.C.P. 12(b). ENA had a reasonable opportunity to present all pertinent material—its own conduct necessitated the treatment of its motion under Rule 56 instead of Rule 12. Indeed, it leveraged that opportunity precisely by including in its motion matters outside the pleadings. There is no legal remedy

available to it now for its decision not to include more or different materials in support of its motion.

ENA suggests that the rule requires advance actual notice to the moving party that the court will treat the motion as one for summary judgment, so that it has the opportunity to present material made pertinent by Rule 56. This does not conform to the rule or its purpose. Any notice requirement in Rule 12(b) presumably exists so that non-moving parties might adequately prepare to defend against summary judgment rather than dismissal. The moving party is necessarily already on notice of that fact. ENA cites to *Federal Practice and Procedure* for the proposition that the notice requirement consists of providing "an adequate opportunity to demonstrate why summary judgment should not be granted" to the party against whom judgment is entered. 10A Charles A. Wright, Arthur R. Miller & Mary K. Kane, *Federal Practice and Procedure* § 2720, at 27 (3d ed. 1998). That does not suggest that the moving party is also entitled to independent notice; it merely acknowledges the necessity of informing adverse parties so that they may prepare to defend against the motion. This is in accord with how the equivalent federal rules have been interpreted.

> In *Capital Partners Int'l Ventures, Inc. v. Danzas Corp.*, a federal trial court held that
>
> [i]f matters outside the pleadings are presented to the court, the motion for judgment on the pleadings is converted into a summary judgment motion under Rule 56 of the Federal Rules of Civil Procedure. Before summary judgment may be entered, the *non-moving* party must be given notice and an opportunity to respond. Notice occurs when a represented party has reason to know the court will look outside of the pleadings.

309 F. Supp. 2d 1138, 1143 (N.D. Cal. 2004) (emphasis added) (citation omitted). This Court has expressed a "preference for interpreting the Idaho Rules of Civil Procedure in conformance with the interpretation placed upon the same language in the federal rules." *Obendorf v. Terra Hug Spray Co., Inc.*, 145 Idaho 892, 897, 188 P.3d 834, 839 (2008). Both the Idaho rule and the federal rule use identical language requiring that motions to dismiss and motions for judgment on the pleadings be treated as summary judgment motions when matters outside the pleadings are presented. I.R.C.P. 12(b), 12(c); F.R.C.P. 12(c), 12(d). Here, even if ENA required notice, it had adequate notice because it had reason to know the court would look outside of the pleadings—ENA itself asked the court to do so by referencing additional materials.

ENA also argues that it was improperly denied a meaningful opportunity to be heard on its motion to dismiss. In support of this line of argument, it claims that the district court ruled

13

that ENA's SBPO was void before finding it had jurisdiction over ENA, that Syringa's motion for partial summary judgment was untimely as against ENA, and that it lacked adequate notice of Syringa's motion.

First, ENA asserts without citation that "the district court found against ENA on the merits without formally holding that ENA was a party!" and that "the District Court ruled ENA's contract with the State void before it found it had jurisdiction over ENA." The record does not support these claims. The district court found that all necessary parties, including ENA, had been joined and that the Court had jurisdiction. In the same memorandum decision and order, the court then found that the SBPOs, as amended to divide the work between Qwest and ENA, were void. ENA has not shown that the district court ruled ENA's SBPO void before finding it had jurisdiction over ENA. Even if ENA had made such a showing, our conclusion that ENA remained a party on remand renders the point irrelevant.

Second, ENA asserts that Syringa's motion for partial summary judgment was untimely as against ENA because it was not filed in compliance with Rule 56(a), which requires filing "after the expiration of twenty (20) days from the service of process upon the adverse party or that party's appearance in the action." ENA was originally served process in this action in December 2009 and appeared repeatedly in 2010 and thereafter. Syringa filed its motion for partial summary judgment on March 20, 2014 and served it on ENA on April 25, 2014. At the district court's order, Syringa also served ENA again on July 3, 2014. The district court presided over a hearing on the motion on October 10, 2014.

The timing requirement in I.R.C.P. 56(a) was not violated in this case, despite the fact that Syringa filed its motion before, rather than at least twenty days after, ENA was re-served process. ENA apparently believes that if *Syringa I* operated to dismiss it from the case then the twenty-day period specified in I.R.C.P. 56(a) would not begin to run until it were re-served or once again appeared in the action. But there is no support in the language of the rule for this interpretation. The plain language of the rule allows a party seeking a declaratory judgment to move for summary judgment any time after the expiration of twenty days from the service of process upon the adverse party or that party's appearance in the action. I.R.C.P. 56(a). ENA was served process in 2009 and appeared in the action by 2010. Syringa's March 20, 2014 motion was at least four years beyond the rule's twenty day requirement. ENA's invocation of Rule

14

56(a) does not help its case. Even if ENA's argument were convincing, the point is irrelevant in light of our conclusion that ENA remained a party on remand.

Further, Rule 61 provides in relevant part that "[t]he court at every stage of the proceeding must disregard any error or defect in the proceeding which does not affect the substantial rights of the parties." I.R.C.P. 61. The purpose of the twenty-day requirement in Rule 56(a) is presumably to ensure that defendants have adequate notice and opportunity to prepare to defend against summary judgment. Here, even if the rule applied, ENA has not shown that any related procedural error or defect affected its substantial rights. Indeed, it cannot do so. ENA was served with the motion on April 25, 2014 and the hearing took place October 10, 2014, over five months later. ENA had more than adequate notice and opportunity to prepare to defend the motion. This same reasoning applies to ENA's separate argument that it lacked adequate notice of Syringa's motion.

ENA also argues that it lacked notice because Syringa's motion specifically listed only DOA as a party against which it sought relief. This argument fails for the same reason that ENA remained a party on remand: ENA knew or should have known that judgment in Syringa's favor would be adverse to ENA's interests because the necessary consequence of a holding for Syringa was that ENA's contract would be void. It was logically impossible for the district court to grant Syringa's requested relief without also harming ENA's interests, and it is entirely consistent—even necessary—to charge ENA with knowledge of this fact.

Moreover, no fewer than six individuals involved in ENA's defense were served on August 21, 2014 with Syringa's notice of hearing indicating that Syringa's motion for partial summary judgment would be argued on October 10, 2014 at 1:00 P.M. The record of actions makes clear that as of August 20, 2014, ENA's own motion to dismiss was scheduled for argument at the same day and time. For ENA to argue that it lacked notice or an opportunity to respond to Syringa's motion for partial summary judgment is simply inaccurate. ENA knew of the motion, knew it would be argued at the same time as its own motion, and had several months in which it could have developed a merits argument opposing Syringa's motion. ENA could have filed a responsive brief in opposition up to October 3, 2014, seven days prior to the hearing. I.R.C.P. 7(b)(3)(E). It did not do so.

Finally, ENA argues that its rights were violated when the district court deprived it of the benefits of its contract without an opportunity to protect its interests. ENA asserts that it should

have had the opportunity to submit additional materials to the court and would have done so if proper procedure had been followed. ENA fails to suggest what additional materials it might have submitted. Following entry of the district court's decision on the dispositive motions, ENA filed a motion for reconsideration, which would have been an opportunity to present new or additional facts or materials but ENA chose not to do so. In any event, as addressed above, ENA had a "reasonable opportunity to present all material made pertinent." I.R.C.P. 12(b).

It appears that ENA made a strategic gamble not to argue the merits of whether its SBPO was void in order to preserve its numerous procedural arguments. ENA lost that gamble. It cannot now win an argument that it is procedurally unjust to void its illegal contract merely because it failed to defend on the merits. ENA cannot avoid an adverse judgment here by claiming it had no opportunity to plead its case when it is clear that it did in fact have ample opportunity.

Finally, the district court did not ignore the arguments in ENA's motion to dismiss, as ENA argues. ENA asserted in its motion that judicial estoppel and *res judicata* precluded Syringa from amending its complaint to challenge ENA's SBPO. The district court expressly acknowledged ENA's arguments and rejected them. The district court determined that it had an independent and affirmative duty to raise the issue of illegality. This ruling rendered it irrelevant whether Syringa, as a party, could be precluded or estopped from challenging ENA's SBPO. Accordingly, we affirm the district court's treatment of ENA's motion to dismiss as a motion for summary judgment.

### 4. The district court did not err in holding that the case was not moot.

DOA and Qwest argue that the case became moot when DOA, ENA, and Qwest mutually purported to rescind the amendments to the original SBPOs in July 2014. They assert that the rescission was effective and that thereafter there was no longer a justiciable controversy and, therefore, the district court lacked subject matter jurisdiction over the case. Syringa argues that the amended contracts were void, that void contracts cannot be rescinded and, therefore, the attempted rescission was futile. The district court found that "DOA's efforts to salvage these void contracts were futile and of no effect. An agreement made in violation of the state's procurement law cannot be fixed or cured."

"Justiciability issues, such as mootness, are freely reviewed." *State v. Barclay*, 149 Idaho 6, 8, 232 P.3d 327, 329 (2010).

16

This Court has not previously addressed whether a void contract can be rescinded, but has held that "[Void] contracts are deemed never to have existed in the eyes of the law." *Thompson v. Ebbert*, 144 Idaho 315, 318, 160 P.3d 754, 757 (brackets in original). This is consistent with the Black's Law Dictionary definition of a void contract as "[a] contract that is of no legal effect, so that there is really no contract in existence at all." Black's Law Dictionary 374 (9th ed. 2009). We now hold that void contracts may not be rescinded because they are deemed never to have existed. A purported rescission of a void contract is, therefore, necessarily a nullity. Accordingly, there was nothing to rescind if the contracts were void. The purported rescission of the amendments could have no legal effect and could not moot the case.

## 5. The district court did not err in ruling that the SBPOs were not saved by a severability clause.

Qwest and DOA argue that a severability clause in the original SBPOs requires that the amendments, if invalid, must be severed from the original SBPOs. According to affidavit testimony, severability clauses incorporated by reference into the SBPOs provide language materially similar to the following: "[i]n the event any term of the Contract is held to be invalid or unenforceable by a court of competent jurisdiction, the remaining terms of the Contract will remain in force."

The district court rejected this severability argument, holding that because the original awards were part of a process used to make an illegal award, the process itself was flawed. This was correct. By its plain language, the severability clause existed to save the enforceable terms within the SBPOs if any term were held invalid or unenforceable. The district court did not conclude that the SBPOs included an unenforceable term. Rather, the district court concluded, correctly, that DOA violated state procurement law in purporting to make the contracts, and that the contracts were, therefore, necessarily void *ab initio*. Because void contracts are deemed never to have existed in the eyes of the law, there was no contract from which illegal terms could be severed. *Thompson*, 144 Idaho at 318, 160 P.3d at 757. The contracts were void in their entirety and could not be saved by severing any particular clauses.

## 6. The district court did not commit reversible error in permitting Syringa to amend its complaint or challenge the SBPOs on remand.

DOA and Qwest argue that the district court erred in permitting Syringa to challenge a contract under which it reaped substantial financial benefit. Both parties also argue that the district court erred in failing to bar Syringa from challenging the original SBPOs on remand.

ENA argues that *res judicata* and judicial estoppel precluded Syringa from challenging the original SBPOs on remand.

"[I]t is well-settled that where an order of a lower court is correct, but based on an erroneous theory, the order will be affirmed upon the correct theory." *Grabicki v. City of Lewiston*, 154 Idaho 686, 692, 302 P.3d 26, 32 (2013) (citation and internal quotation marks omitted). The Court "will uphold the decision of a trial court if any alternative legal basis can be found to support it." *Daleiden v. Jefferson Cty. Joint Sch. Dist. No. 251*, 139 Idaho 466, 470–471, 80 P.3d 1067, 1071–1072 (2003).

Because the district court had an independent affirmative duty to address the issue of illegality, none of these arguments are relevant. The district court had the authority to declare the SBPOs void regardless of whether Syringa had properly challenged them. Even if the district court had erred in determining whether Syringa could challenge the SBPOs, that error was harmless in light of its duty to independently declare the SBPOs void if it found them to be unlawful. The Court need not and does not undertake further analysis of these issues.

**B.  The district court's order concluding the SBPOs were void was substantively correct.**

On summary judgment, the district court concluded that the SBPOs, as amended, were made in violation of Idaho Code section 67-5718(2), IDAPA 38.05.01.052 and Idaho Code section 67-5718A and that, as such, the agreements were void. The district court held that in *Syringa I* this Court ruled that DOA violated state procurement law and that the ruling established the law of the case, binding the parties and the district court.

DOA and Qwest appealed the district court's order declaring that the SBPOs were void, in part by challenging the district court's conclusion that the law of the case doctrine applies. They argue that with respect to Count Three, *Syringa I* addressed only the threshold issue of whether Syringa had standing to pursue the claim and that the Court's comments regarding any alleged violation are necessarily dicta. In response, Syringa refers to language in *Syringa I* that appears to unambiguously state that DOA violated the law.

Because this challenge is to the district court's grant of summary judgment, we review this issue *de novo*. *Curlee v. Kootenai Cnty. Fire & Rescue*, 148 Idaho at 391, 394, 224 P.3d 458, 461 (2008). "When ruling on a motion for summary judgment, disputed facts are construed in favor of the non-moving party, and all reasonable inferences that can be drawn from the record are drawn in favor of the non-moving party." *Id*.

The law of the case doctrine does not apply to this issue, and the district court erred in holding otherwise. In *Syringa I*, we stated:

> To satisfy the requirement of standing, litigants generally must allege or demonstrate an injury in fact and a substantial likelihood that the judicial relief requested will prevent or redress the claimed injury. . . .
> . . . [W]hen the amendments to the contracts are viewed in the context of the entire bidding process, Syringa does have standing.
> . . . .
> Syringa has alleged a distinct and palpable injury, not suffered by all Idaho citizens, that is alleged to have been caused by the challenged conduct and that can be redressed by judicial relief.

155 Idaho at 55, 60–62, 305 P.3d 499, 504–506 (2013) (citation and internal quotation marks omitted). There is admittedly strong and direct language in *Syringa I* that would appear to conclusively establish that DOA violated the law. However, we ultimately concluded that "Syringa has *alleged*," rather than demonstrated, an injury sufficient to confer standing. *Id.* at 62, 305 P.3d at 506 (emphasis added). Further, we did not order entry of judgment in Syringa's favor; we merely held that "Syringa has standing to challenge the amended contract to Qwest." *Id.* Finally, in *Syringa I*, Syringa had appealed the entry of summary judgment against it. *Id.* at 59, 305 P.3d at 503. As the non-moving party at the district court, we were obligated both to construe disputed facts and to draw reasonable inferences in Syringa's favor. *Curlee*, 148 Idaho at 394, 224 P.3d at 461. The fact that the Court did not choose in drafting its opinion in *Syringa I* to repeatedly use hedging language such as "Syringa alleges that . . ." or "As Syringa claims, . . ." does not somehow cause its ruling on the threshold issue of standing to become authoritative on the merits. Accordingly, the district court erred in applying the law of the case doctrine to hold that we conclusively determined in *Syringa I* that the SBPOs, as amended, were void.

However, the Court "will uphold the decision of a trial court if any alternative legal basis can be found to support it." *Daleiden*, 139 Idaho at 470–471, 80 P.3d at 1071–1072. "Summary judgment is appropriate if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Curlee*, 148 Idaho at 394, 224 P.3d at 461. "If the evidence presented shows no disputed issues of material fact, then all that remains are questions of law, over which this Court exercises free review." *State ex rel. Wasden v. Maybee*, 148 Idaho 520, 527, 224 P.3d 1109, 1116 (2010).

19

Here, there are only two material facts and there is no genuine issue or dispute as to either. First, DOA granted SBPOs to Qwest and ENA as a multiple award under Idaho Code section 67-5718A. Second, less than one month later, DOA amended the SBPOs to assign to Qwest "all IEN technical network services" and to constitute ENA as "the Service Provider listed on the State's Federal E-rate Form 471."

Idaho Code section 67-5718A(1) permits "an award of a contract to two (2) or more bidders to furnish the same or similar property where more than one (1) contractor is necessary" under certain circumstances. Section 67-5718A(3) provides that "[w]here a contract for property has been awarded to two (2) or more bidders in accordance with this section, a state agency shall make purchases from the contractor whose terms and conditions regarding price, availability, support services and delivery are most advantageous to the agency." Section 67-5718(2) requires that requests for proposals "shall describe the property to be acquired in sufficient detail to apprise a bidder of the exact nature or functionality of the property required." Section 67-5725 provides that "[a]ll contracts or agreements made in violation of the provisions of this chapter shall be void."

Under these facts, summary judgment for Syringa is proper. We now specifically hold what we said in the context of standing in *Syringa I*:

> The amendments to the purchase orders issued to ENA and Qwest were, in effect, changing the RFP after the bids were opened. The RFP solicited proposals from bidders who were able to perform the entire contract which, under the wording of the RFP, would be a "total end-to-end service support solution." . . . The RFP did not seek bids for one contract to provide the backbone and a separate contract to be the E-rate service provider. . . .
>
> By amending the contracts so that Qwest and ENA were no longer furnishing the same or similar property, the State has, in effect, changed the RFP after the bids had been opened in violation of I.C. § 67-5718(2) and IDAPA 38.05.01.052. The separate contracts as amended no longer conform to the RFP's description of the property to be acquired. The description of property to be provided by Qwest under its amended contract is not a minor deviation from the property to be provided by the successful bidder under the RFP, nor is the property to be provided by ENA under its amended contract. "[M]ere schemes to evade law, once their true character is established, are impotent for the purpose intended. Courts sweep them aside as so much rubbish." *O'Bryant*, 78 Idaho at 325, 303 P.2d at 678.

20

155 Idaho at 61−62, 305 P.3d at 505−06. What were supposed to have been side-by-side, end-to-end competing contracts turned into a non-competitive blended arrangement that left State users with no lower cost choice.

DOA argues that the SBPOs themselves were lawful and that if the amendments were illegal the proper remedy is to void the amendments while upholding the SBPOs. Qwest echoes this argument, also asserting that portions of the SBPOs unrelated to the IEN should be upheld because they were unrelated to the illegal amendments. In response, Syringa argues that material amendments to competitively bid public contracts are impermissible and illegal amendments can render both the amendment and the underlying contract void. Although Idaho law has not previously addressed this precise issue, McQuillin on Municipal Corporations provides that a public contract will "be set aside where specifications are changed after the bidding has been closed." 10 McQuillin Mun. Corp. § 29:69 (3d ed.). Additionally, "[w]here there is deviation from the requirements of public bidding, the proper procedure is to readvertise, and secure another open competitive bidding so that all of the bidders would be on an equal footing." *Id.* at § 29:35. The Court will adopt and apply these rules in this case.

Here, DOA's amendments rendered the SBPOs unlawful in that they changed "the property to be acquired" under each SBPO, in violation of Idaho Code section 67-5718(2). The changes were material in that they changed the scope of the work to be performed under each SBPO of the multiple award. The amendments occurred less than one month after bidding had been closed. This tainted the public procurement process and permanently invalidated the SBPOs. The Appellants essentially seek to close the barn door after substantial funds had been advanced by the State under the unlawfully amended SBPOs. As performed, the SBPOs and their respective amendments became inseparable. The district court's entry of summary judgment on grounds of illegality was therefore proper because there was no genuine issue or dispute as to a material fact. We affirm the district court's order holding that both the ENA SBPO and the Qwest SBPO are void.

**C. The district court did not commit error or abuse its discretion in denying Syringa's motion to include in its judgment an order directing DOA, under Idaho Code section 67-5725, to demand repayment of money advanced under the SBPOs.**

After summary judgment was granted in its favor, Syringa submitted a proposed form of judgment that would have required the Administrator of the Division of Purchasing within DOA to demand repayment of all sums of money advanced by the State of Idaho in consideration of

the SBPOs, as required by Idaho Code section 67-5725.[5] The district court did not include Syringa's proposed language in its judgment. Syringa subsequently filed a motion to amend the judgment or, in the alternative, for partial reconsideration and/or clarification of the district court's relevant memorandum decision and order. The district court again rejected Syringa's proposed language, explaining that the application of Idaho Code section 67-5725 involved development of factual and legal issues that had not been presented. Syringa cross-appealed the district court's refusal to include the proposed form of judgment.

Syringa argues that section 67-5725 sets forth mandatory consequences that apply as a result of the district court's ruling that the SBPOs are void. Syringa asserts that the district court erred or abused its discretion by excluding the proposed paragraph from its judgment. Syringa does not articulate why or how the district court was obligated to include the requested language.

This Court reviews an order denying a motion to alter or amend a judgment for an abuse of discretion. *Slaathaug v. Allstate Ins. Co.*, 132 Idaho 705, 707, 979 P.2d 107, 109 (1999). "So long as the trial court recognized the matter as discretionary, acted within the outer boundaries of the court's discretion, and reached its conclusion through an exercise of reason, this Court will not disturb the decision on appeal." *Id.* However, "when the district court grants summary judgment and then denies a motion for reconsideration, this Court must determine whether the evidence presented a genuine issue of material fact to defeat summary judgment. This means the Court reviews the district court's denial of a motion for reconsideration de novo." *Massey v. Conagra Foods, Inc.*, 156 Idaho 476, 480, 328 P.3d 456, 460 (2014) (internal quotation marks omitted). Because Syringa's motion was a "motion to amend judgment, or in the alternative, for partial reconsideration" both standards of review are implicated.

The outcome is the same under both standards. Syringa is correct that the statute provides mandatory consequences. However, it was not the district court's duty in this circumstance to include the requested order in its judgment. Section 67-5725 does impose an obligation on the proper officer "of the state of Idaho" to seek repayment of money advanced under the void

---

[5] Section 67-5725 provides in relevant part:

> All contracts or agreements made in violation of the provisions of this chapter shall be void and any sum of money advanced by the state of Idaho in consideration of any such contract or agreement shall be repaid forthwith. In the event of refusal or delay when repayment is demanded by the proper officer of the state of Idaho, under whose authority such contract or agreement shall have been made or entered into, every person so refusing or delaying, together with his surety or sureties, shall be forthwith prosecuted at law for the recovery of such sum of money so advanced.

SBPOs, if repayment is refused or delayed. But it imposes no obligation on the district court to preemptively order that DOA comply with this obligation. If the appropriate State officer fails to perform this statutory obligation, the State's chief legal officer can step forward to make the State whole for these unfortunate violations of State law.

Because Syringa has not shown that the district court had a duty to order DOA to comply with the statutory obligation imposed by Idaho Code section 67-5725, it cannot have been error or an abuse of discretion for the district court to refuse to include such an order in its judgment. Accordingly, we affirm the district court's denial of Syringa's combined motion to amend judgment or to reconsider.

**D. The district court did not abuse its discretion in awarding attorney fees to Syringa.**

The district court found that on remand Syringa was the prevailing party and it awarded Syringa attorney fees under Idaho Code sections 12-117, 12-120(3), and 12-121. The district court stated that "from the overall view, while Syringa lost a number of preliminary battles, in the end Syringa won the war that mattered decisively, after a lengthy and expensive challenge to a state agency willing and able to devote significant resources defending its conduct."

DOA challenges these determinations, arguing that Syringa was not the prevailing party and that a fee award under section 12-117 is improper because the case deals with an issue of first impression. DOA also challenges the propriety of the award under sections 12-120(3) and 12-121.

"The district court's determination of prevailing party status for the purpose of awarding attorney fees and costs is within the court's sound discretion, and will not be disturbed on appeal unless there is an abuse of discretion." *Hobson Fabricating Corp. v. SE/Z Const., LLC*, 154 Idaho 45, 49, 294 P.3d 171, 175 (2012). This Court also reviews a district court's decision granting attorney fees under Idaho Code section 12-117 under the abuse of discretion standard. *City of Osburn v. Randel*, 152 Idaho 906, 908, 277 P.3d 353, 355 (2012). Under the abuse of discretion standard, "[s]o long as the trial court recognized the matter as discretionary, acted within the outer boundaries of the court's discretion, and reached its conclusion through an exercise of reason, this Court will not disturb the decision on appeal." *Slaathaug*, 132 Idaho at 707, 979 P.2d at 109.

**1. The district court did not err in determining that Syringa was the prevailing party.**

23

Idaho Rule of Civil Procedure 54(d)(1)(B) guides the prevailing party analysis: "In determining which party to an action is a prevailing party and entitled to costs, the trial court shall in its sound discretion consider the final judgment or result of the action in relation to the relief sought by the respective parties." We stated in *Hobson* that "the issue . . . is not who succeeded on more individual claims, but rather who succeeded on the main issue of the action." 154 Idaho at 49, 294 P.3d at 175.

"In determining which party prevailed in an action where there are claims and counterclaims between opposing parties, the court determines who prevailed 'in the action.' That is, the prevailing party question is examined and determined from an overall view, not a claim-by-claim analysis." *Eighteen Mile Ranch, LLC v. Nord Excavating & Paving, Inc.*, 141 Idaho 716, 719, 117 P.3d 130, 133 (2005). Although this case is not one where there are "claims and counterclaims between opposing parties," we nonetheless adopt and apply the "overall view" here because that approach is equally appropriate in an action involving multiple claims.

In *Idaho Military Historical Soc'y, Inc. v. Maslen*, the plaintiff was deemed the prevailing party after having been awarded equitable relief despite not succeeding on a variety of secondary issues. 156 Idaho 624, 630–631, 329 P.3d 1072, 1078–1079 (2014). In that case, we upheld the district court's conclusion that in determining the prevailing party the court could consider the conduct that "primarily precipitated" the lawsuit. *Id.* at 630, 329 P.3d at 1078. The instant case is similar to *Maslen* in that each of Syringa's claims, including those on which it did not prevail, was primarily precipitated by the conduct challenged in Count Three—DOA's violation of the procurement statutes in awarding the SBPOs.

DOA has failed to show, in light of applicable case law, that the district court abused its discretion in determining that Syringa was the prevailing party. Accordingly, we affirm the district court's holding that Syringa was the prevailing party.

**2. The district court did not abuse its discretion by awarding Syringa fees under Idaho Code section 12-117.**

Under Idaho Code section 12-117(1), "in any proceeding involving as adverse parties a state agency . . . and a person, . . . the court hearing the proceeding, . . . shall award the prevailing party reasonable attorney's fees, witness fees and other reasonable expenses, if it finds that the nonprevailing party acted without a reasonable basis in fact or law." "Where an agency has no authority to take a particular action, it acts without a reasonable basis in fact or law."

*Fischer v. City of Ketchum*, 141 Idaho 349, 356, 109 P.3d 1091, 1098 (2005) *overruled on other grounds by City of Osburn v. Randel*, 152 Idaho 906, 277 P.3d 353 (2012).

In granting Syringa fees under Idaho Code section 12-117, the district court held that

> Idaho Code § 12-117 has two purposes: "(1) to serve as a deterrent to groundless or arbitrary agency action; and (2) to provide a remedy for persons who have borne an unfair and unjustified financial burden attempting to correct mistakes agencies should never have made." *Ralph Naylor Farms, LLC v. Latah Cnty.*, 144 Idaho 806, 809, 172 P.3d 1081, 1084 (2007) (overruled as to the standard of review only by *City of Osburn v. Randel*, 152 Idaho 906, 277 P.3d 353 (2012) (quoting *Rincover v. State of Idaho, Dep't. of Finance*, 132 Idaho 547, 549, 976 P.2d 473 (1999)). If an agency acts without any authority, it is acting without a reasonable basis in law or fact. *Id.*

The district court held that DOA's continued defense of the legality of the SBPOs after *Syringa I* lacked a reasonable basis in law or fact.

DOA argues that, as a matter of law, "[a] party did not act without a reasonable basis in fact or law if it raised an issue of first impression in Idaho or presented a legitimate question for this Court to address." *Hobson Fabricating*, 154 Idaho at 53, 294 P.3d at 179. DOA points out that its defense of Count Three before *Syringa I* was so successful that the district court dismissed the claim, and that this dismissal demonstrates the reasonableness of DOA's defense. Additionally, DOA argues that Syringa has conceded the case involved novel, difficult legal questions that required extensive effort.

Syringa argues that DOA acted without basis in law because it violated Idaho Code sections 67-5718(2) and 67-5718A. It further argues that the district court's award of fees squarely vindicates both purposes served by section 12-117: serving as a deterrent to future unlawful action and providing some relief to Syringa, which bore a significant financial burden attempting to correct DOA's actions.

Finally, DOA argues that the district court abused its discretion in awarding Syringa attorney fees because Syringa failed to distinguish between time spent litigating Count Three and time spent litigating its other claims. Syringa disputes this allegation, claiming that the district court expressly recognized, based on its review of Syringa's materials in support of its fee request, that Syringa segregated and sought only reasonable fees related to Count Three. Indeed, the district court stated that it

> has concluded that Syringa's fee request from and after March 29, 2013 is reasonable. The Court has reviewed all of the entries and fees requested prior to March 29, 2013. The description of the work is detailed. It appears that Plaintiff is

> not seeking any fees related to the appeal. It also appears that Syringa is seeking
> only fees related to its pursuit of Count Three, on which Syringa prevailed.

DOA specifically references time entries related to researching the Idaho Tort Claims Act, a 42 USC § 1983 claim, a qui tam action, sovereign immunity, and other issues. But as to each entry, DOA's reasoning why it was unrelated to Count Three is either absent or conclusory. DOA asserts that if any of the awarded fees were unwarranted, the entire award must be reversed. *See Rockefeller v. Grabow*, 136 Idaho 637, 645, 39 P.3d 577, 585 (2001). Whether *Rockefeller* applies or controls here is irrelevant.

DOA has failed to show that the district court abused its discretion in granting Syringa attorney fees under Idaho Code section 12-117. The court recognized the issue of awarding attorney fees as one of discretion and it acted within the outer bounds of its discretion and by exercising reason when it cited mandatory precedent holding that an agency acts without a reasonable basis in fact or law when it acts without authority. DOA lacked the authority to violate Idaho Code sections 67-5718 and 67-5718A. Rather than recognizing that the actions of former director Gwartney corrupted the procurement process, DOA doggedly defended that process to the bitter end. The district court was within its discretion to find that nothing in the protracted proceedings subsequently rendered DOA's defense reasonable. Further, DOA has not shown that any time entries, including the ones it expressly mentions, were unrelated to Count Three. Some of the entries do, on their face, seem unrelated to the allegations in Count Three. However, in this multi-year, multi-party litigation it is conceivable that any number of ancillary issues might arise and be related, if only tangentially, to the main issue. Because DOA has not made a specific showing that any particular time entries cannot possibly have been related to Count Three, we affirm the district court's exercise of discretion in awarding attorney fees in the specified amount. In light of this holding, we need not review the correctness of the district court's alternative grounds for awarding Syringa attorney fees under Idaho Code sections 12-120(3) and 12-121.

### E. No party is entitled to attorney fees on appeal.

ENA seeks attorney fees on appeal under Idaho Code section 12-120(3). Syringa seeks attorney fees on appeal under Idaho Code sections 12-117, 12-120(3), and 12-121. DOA seeks attorney fees on appeal under Idaho Code sections 12-117 and 12-121. For a party to recover fees under any of these provisions, it must be the prevailing party. Where adverse parties have each prevailed in part on appeal, neither is the prevailing party. *Wright v. Bd. of Psychological*

*Exam'rs (In re Bd. of Psychologist Exam'rs' Final Order)*, 148 Idaho 542, 548, 224 P.3d 1131, 1137 (2010). ENA is not the prevailing party because it lost its appeal, and neither Syringa nor DOA are the prevailing party because they each successfully defended against the other's appeal but lost their own appeal. Accordingly, there is no prevailing party and, therefore, no party is entitled to attorney fees on appeal.

## V.
## CONCLUSION

We affirm the judgment of the district court. No party is granted attorney fees on appeal. Costs to Syringa.

Justices EISMANN, BURDICK, W. JONES, and HORTON CONCUR.